## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF IDAHO

IN RE )
)
RODRIGUEZ, OSCAR O. and ) Case No. 05-05694-TLM
OLIVO, ELIZABETH, )
)
Debtors. ) MEMORANDUM OF DECISION
)
_____ )

## INTRODUCTION

Oscar Rodriguez and Elizabeth Olivo ("Debtors") filed a voluntary joint

bankruptcy petition under chapter 13 of the Bankruptcy Code, Title 11 of the U.S.

Code, on November 2, 2005. *See* Doc. No. 1. Since their petition was filed after

October 17, 2005, the Bankruptcy Code amendments of the Bankruptcy Abuse

Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23

(2005) ("BAPCPA"), apply.

BAPCPA significantly altered the procedural and substantive requirements

for obtaining bankruptcy relief. One such change is at issue here: the pre-

bankruptcy credit counseling now required under § 109(h) as a condition of

eligibility of individuals to file.[1]

_____

[1] Section 109(h)(1) requires:

(continued...)

MEMORANDUM OF DECISION - 1

## BACKGROUND AND FACTS

### A.    Debtors' petition and their initial submissions

Debtors' petition indicated in the required box on Official Form 1

addressing the "Certification Concerning Debt Counseling by Individual/Joint

Debtor(s)" that:

> ☐   I/we have received approved budget and credit counseling during
> the 180-day period preceding the filing of this petition.

> ■   I/we request a waiver of the requirement to obtain budget and credit
> counseling prior to filing based on exigent circumstances. (*Must attach
> certification describing*.)

*See* Doc. No. 1 at 2 (emphasis added).  Despite their indication that this second

paragraph applied, Debtors' petition included no "attach[ed] certification

describing" the exigent circumstances.  *Id.*

On November 3, the day after filing their petition, Debtors filed a "Request

for Waiver of Timely Filing of Title 11 U.S.C. § 109(h) Credit Certificate."  *See*

---

[1](...continued)
(h)(1)  Subject to paragraph (2) and (3), and notwithstanding any other provision of
this section, an individual may not be a debtor under this title unless such individual
has, during the 180-day period preceding the date of filing of the petition by such
individual, received from an approved nonprofit budget and credit counseling
agency described in section 111(a) an individual or group briefing (including a
briefing conducted by telephone, or on the Internet) that outlined the opportunities
for available credit counseling and assisted such individual in performing a related
budget analysis.

MEMORANDUM OF DECISION - 2

Doc. No. 6 (the "Request").[2]

The Request alleges in material part:

–   that Debtor Elizabeth Olivo was facing a wage garnishment, which

would be effective unless a bankruptcy notice was received by her employer's

payroll department prior to November 3;

–   that on November 2, Debtors met with counsel and attempted to contact

via the Internet an approved credit counseling entity, was advised to call for a user

name and password, but was left with a ringing, unanswered phone;

–   that on the same afternoon, Debtors contacted another approved credit

counseling entity over the Internet, entered financial information, were instructed

to enter a "chat room" for assistance but, finding no one there called a number for

assistance, and were told that the information would be retrieved in an hour after

which a counselor would call Debtors to schedule an appointment;

–   that to prevent the garnishment, Debtors were required to file their

petition before the credit counseling could occur.

*Id.* at 1-2.

The Request was signed by Debtors' attorney.  It was not verified or signed

by Debtors.  *Id.*  Debtors did not file an affidavit in support of the Request or any

---

[2]  The Debtors filed a duplicate Request on November 8.  *See* Doc. No. 13.  It added only
the case number to the caption.  Therefore, the Court simply cites and discusses the original
Request.

MEMORANDUM OF DECISION - 3

similar submission.

The Request was not set for hearing.  Nor did Debtors bring it to the attention of the Court, by tendering a proposed order or otherwise.  Following discovery of the Request in a general review of files, the Court immediately set the matter for hearing on November 21, 2005.

Debtors appeared, as did the chapter 13 trustee.  The trustee raised no objection to the Request and did not comment upon it.  The office of the United States Trustee, though provided notice, did not appear and filed no written submission.[3]

### B.    Debtors' post-hearing submissions

On November 21, subsequent to the hearing, each Debtor filed a "certificate" in support of the Request.  *See* Doc. No. 21 (the "First Certifications").[4]  Debtors state:

> On November 2, prior to filing my bankruptcy petition, I met with my attorney . . . at his office.  While at his office, I requested credit counseling services from an approved nonprofit budget and credit counseling agency, via internet and telephone.  I was unable to obtain services for an individual or group briefing outlining the opportunities for available credit counseling and assisting me in performing a related

---

[3] The absence of the U.S. Trustee appears intentional; in addition to receiving notice, its counsel was present in the Court's gallery when the case was called.  The Court expresses its strong disapproval of the U.S. Trustee's elected course, and its lack of participation on an issue of first impression under BAPCPA that is so closely aligned with the U.S. Trustee's supervision and enforcement responsibilities.

[4] They are essentially identical and, indeed, verbatim in all material allegations.

MEMORANDUM OF DECISION - 4

budget analysis during the 5-day period beginning on November 2, 2005.

*Id.* at 1-2 (internal paragraph designations omitted).  The First Certifications were signed and certified by Debtors under penalty of perjury as true and correct.  *Id.* at 3.

Debtors' counsel had alluded to these impending certifications at the time of the hearing.  The Court deferred ruling at hearing, and allowed Debtors until November 25 within which to file them and any and all other materials they wanted the Court to consider in connection with the Request.

On November 24, Debtor Olivo's "2nd certification" in support of the Request was filed.  *See* Doc. No. 24 (the "Second Certification").  In this document, Debtor certified, again under penalty of perjury, additional facts and details.[5]

The Second Certification states that Debtors' initial contact with counsel occurred a month before the filing, on October 5, 2005, following a wage garnishment on September 26.  Debtor Olivo also states that "I knew the [bankruptcy] laws were changing, but was not specifically aware of the credit counseling requirement.  I thought I would file prior to the bankruptcy law

---

[5] As will be discussed, these additional facts create problems for Debtors.  The Court presumes their counsel appreciated that fact, but concluded the Second Certification should be filed nevertheless.  The Court commends him for his candor.  *See* Idaho Rule of Professional Conduct 3.3 (Candor toward the tribunal).

MEMORANDUM OF DECISION - 5

changes, but was unable to come up with the filing fee and attorneys fees at that time." *Id.* at 1.

Following further garnishments on October 6 and on October 24, and Debtor Rodriguez's loss of work on October 24, Debtor Olivo determined the bankruptcy was needed. She contacted counsel again on November 1, and during that call the credit counseling requirement was specifically discussed. *Id.* at 1-2.

Because Debtors lacked Internet access and since Debtor Rodriguez did not speak English, their counsel suggested they come to his office the following day, November 2, to explore counseling options over the telephone and Internet. *Id.* at 2. This is what occurred according to Debtor Olivo:

> I took time off work and my husband and I met with [counsel] at his office [on November 2]. [Counsel] called the first credit counseling place, but only received continual rings with no answer. [Counsel] then accessed a website for a second counseling agency. The counseling website began asking us to input information. We spent the next 2 hours inputting all of our creditors, and amounts due on debts, and inputting all our budget income and expenses. I interpreted for my husband as we went through the process. At the end of the input process, we were directed to enter a chat room which we did, but there was no response. After that, [counsel] contacted the counseling agency by telephone. He spoke to a person on the phone who said they could download our information but that there was no qualified credit counselor available, and that he was not qualified. The person told [counsel] that it would cost $100.00 for the both of us. While we did not have $100.00 at that time, [counsel] could have paid the fee from the money we had given his firm using the firm's debit card.

*Id.* at 2-3.

Since it was late, and given the desire to stop the November 3 garnishment,

MEMORANDUM OF DECISION - 6

and because their counsel "advised [Debtor Olivo] that there was an exception to the credit counseling requirement for exigent circumstances, and that our circumstances might qualify," Debtors decided to file that evening. *Id.* at 3. After filing, Debtors contacted yet another (*i.e.*, a third) credit counseling agency, and made arrangements to obtain the counseling from it. *Id.*

Having considered Debtors' arguments and submissions[6] regarding several issues of first impression generated under BAPCPA and these facts, the Court enters this Decision, which constitutes its findings of fact and conclusions of law. Fed. R. Bankr. P. 7052, 9014.

## DISCUSSION AND DISPOSITION

### A.  The prefiling credit counseling requirement

Section 109(h)(1) establishes, as a condition of eligibility for any individual[7] to file a petition for bankruptcy relief under any chapter of Title 11, that he or she (or, in § 302(a) joint cases, they) have received an individual or group briefing from an approved nonprofit budget and credit counseling agency within 180 days preceding their petition. Section 109(h)(1)'s new threshold

---

[6] Debtors also filed a brief on November 25, Doc. No. 25, which has been considered. No other parties made submissions or arguments.

[7] By its terms, the counseling provision of § 109(h)(1) applies only to debtors who are individuals. *See also* § 101(13) (defining "debtor"), § 101(41) (defining "person"). *Accord In re Montoya*, No. 05B-80022, 2005 WL 3160532, at *3 n.9 (Bankr. D. Utah November 23, 2005) (addressing definition of "individual" in connection with BAPCPA amendments in § 362(c)(3)).

MEMORANDUM OF DECISION - 7

requirement for obtaining bankruptcy relief is mandatory and clear (*i.e.*, "an individual may not be a debtor unless . . ..").

Individual debtors prove that they satisfied the counseling requirement and are eligible for bankruptcy relief by filing the credit counseling agency's "certificate" showing that they in fact received the prebankruptcy counseling or briefing within the preceding 180 days and also filing, if generated in such counseling, any debt repayment plan. *See* § 521(b).[8]  Under the Rules, a debtor is to file this agency "certificate" with his petition.[9]

### B.    The requirement does not apply where approved counseling is not available

----

[8]  Section 521(b) states:

(b)    In addition to the requirements under subsection (a), a debtor who is an individual shall file with the court –
  (1)    a certificate from the approved nonprofit budget and credit counseling agency that provided the debtor services under section 109(h) describing the services provided to the debtor; and
  (2)    a copy of the debt repayment plan, if any, developed under section 109(h) through the approved nonprofit budget and credit counseling agency referred to in paragraph (1).


[9]  Amendments to the Federal Rules of Bankruptcy Procedure necessary to meet the requirements imposed by BAPCPA are addressed through nationally uniform "Interim Rules." Those Interim Rules were adopted by this Court under General Order 199 (Oct. 17, 2005). Interim Rule 1007(b)(3) states "Unless the United States trustee has determined that the credit counseling requirement of § 109 does not apply in the district, an individual debtor must file the certificate and debt repayment plan, if any, required by § 521(b), a certification under § 109(h)(3), or a request for a determination by the court under § 109(h)(4)."  Under Interim Rule 1007(c), this agency certificate, or the request for an exception or an exemption under § 109(h)(3) or (4), must be filed "with the petition" (and not, like other matters addressed in Rule 1007(c), within 15 days of the petition). Additionally, a debtor must assert either his compliance or his request for exemption by checking the appropriate box on the face of the second page of the petition, Official Form 1, as quoted earlier in the text of this Decision.

MEMORANDUM OF DECISION - 8

Under § 109(h)(2), the credit counseling requirement does not apply in any district where the U.S. Trustee has determined that the approved nonprofit budget and credit counseling agencies are not reasonably able to provide adequate services.[10]  In the District of Idaho, the U.S. Trustee has not made this § 109(h)(2)(A) determination.  In fact, the U.S. Trustee has approved multiple agencies.  *See* http://www.usdoj.gov/ust/eo/bapcpa/ccde/cc_approved.htm#ID (listing approved agencies in this District); *see also* § 111(a)(1) (requiring the Clerk to maintain a publically available list of such agencies), *and* this Court's Website at www.id.uscourts.gov/BK_Reform/BKReformAct2005.htm (linking the U.S. Trustee's Website and list of approved agencies).

Thus, the refuge of § 109(h)(2)(A) is not available in this District.

**C.    Statutory exceptions, for some debtors, from the counseling requirement**

---

[10]  Section 109(h)(2) states:

(2)(A)  Paragraph (1) shall not apply with respect to a debtor who resides in a district for which the United States trustee (or the bankruptcy administrator, if any) determines that the approved nonprofit budget and credit counseling agencies for such district are not reasonably able to provide adequate services to the additional individuals who would otherwise seek credit counseling from such agencies by reason of the requirements of paragraph (1).

(B)  The United States trustee (or the bankruptcy administrator, if any) who makes a determination described in subparagraph (A) shall review such determination not later than 1 year after the date of such determination, and not less frequently then annually thereafter.  Notwithstanding the preceding sentence, a nonprofit budget and credit counseling agency may be disapproved by the United States trustee (or the bankruptcy administrator, if any) at any time.

MEMORANDUM OF DECISION - 9

Under § 109(h)(4), the credit counseling requirement does not apply to a debtor if the Court determines that debtor was unable to complete the requirement because of "incapacity, disability, or active military duty in a military combat zone."[11]  This determination comes "after notice and hearing."[12]

This exception or exclusion is not urged in the present case.

### D.    Exemptions of limited duration from the counseling requirement

Section 109(h)(3)[13] allows for an "exemption" from the credit counseling

---

[11]  Section 109(h)(4) states in full:

(h)(4)  The requirements of paragraph (1) shall not apply with respect to a debtor whom the court determines, after notice and hearing, is unable to complete these requirements because of incapacity, disability, or active military duty in a military combat zone.  For the purposes of this paragraph, incapacity means that the debtor is impaired by reason of mental illness or mental deficiency so that he is incapable of realizing and making rational decisions with respect to his financial responsibilities; and "disability" means that the debtor is so physically impaired as to be unable, after reasonable effort, to participate in an in person, telephone, or Internet briefing required under paragraph (1).

[12]  Unlike the "certification" issue under § 109(h)(3) discussed in today's decision, § 109(h)(4) does not address expressly or by inference the procedure to be used to bring the question of § 109(h)(4) exceptions or exclusions before the Court.  However, it is clear that the burden rests on the debtor to make a *prima facie* factual showing that one of the excluding factors – of incapacity, disability or active combat-zone military service – exists.  This strongly suggests use of a verified motion, supporting affidavit or certification if relief under § 109(h)(4) is sought.  Interim Rules 1007(b)(3) and (c) make it incumbent on debtors or their counsel to make such submissions with the petition and actively pursue a Court ruling.  However, the phrase used in § 109(h)(4) ("after notice and hearing") does not make an actual hearing required in all circumstances.  *See* § 102(1).

[13]  Section 109(h)(3) states:

(A)  Subject to subparagraph (B), the requirements of paragraph (1) shall not apply with respect to a debtor who submits to the court a certification that–
    (i) describes exigent circumstances that merit a waiver of the requirements of paragraph (1):

(continued...)

MEMORANDUM OF DECISION - 10

requirement.[14]  Section 109(h)(3) addresses both the procedural process and the

substantive requirements to obtain this temporary exemption.[15]

### 1.      A "certification" is required

Under the express language of § 109(h)(3)(A), the debtor "submits to the

court *a certification*" in order to seek the exemption.  *Id.* (emphasis added).

---

[13](...continued)
> (ii) states that the debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services referred to in paragraph (1) during the 5-day period beginning on the date on which the debtor made that request; and
> (iii) is satisfactory to the court.

> (B)  With respect to a debtor, an exemption under subparagraph (A) shall cease to apply to that debtor on the date on which the debtor meets the requirements of paragraph (1), but in no case may the exemption apply to the debtor after the date that is 30 days after the debtor files a petition, except that the court, for cause, may order an additional 15 days.

[14]  Section 109(h)(3)(A)(i) uses the term "waiver" while § 109(h)(3)(B) characterizes the result of a successful § 109(h)(3)(A) showing as an "exemption."  Like much of BAPCPA, it is hard to tell whether terminology is used with active intention or sloppy inattention.  "Waiver" is generally viewed as a voluntary relinquishment of a known right or advantage.  *See* Black's Law Dictionary 1611 (8th ed. 2004).  On the other hand, an "exemption" is a "freedom from a duty, liability, or requirement."  *Id.* at 612.  It may be that "waiver" is used in a generic, nonlegal sense to indicate that the "exemption" is of limited duration.  *See*, *e.g.*, Webster's New Twentieth Cent. Dictionary 2055 (2nd. ed.) (alternate definition of "waive" as "to put off until later; to postpone; to defer").  The Court concludes, given the overall structure of the § 109(h) amendments, that it will use the term "exemption" noting that § 109(h)(3)(B) addresses the duration of that exemption.  For emphasis, the Court will at times use the phrase "temporary exemption."  *Accord In re Hubbard*, 332 B.R. 285, 288 (Bankr. S.D. Tex. 2005) (also using phrase "temporary exemption").

[15]  It is important to note that the Court is not today addressing a situation where a debtor got the prebankruptcy counseling and simply lacks the agency's certificate of completion he needs to file under § 521(b)(1) and Interim Rule 1007(b)(3).  While that certificate is to be filed with the petition, *see* Interim Rule 1007(c), it is conceivable that in rare circumstances a debtor might need to seek an extension of time for its physical filing.  Such a request does not appear to be foreclosed assuming adequate cause can be shown.  *See* Interim Rule 9006(b)(1) to (b)(3).  *But see In re Sukmungsa*, No. 05-80029, 2005 WL 3160607 (Bankr. D. Utah Nov. 23, 2005).

MEMORANDUM OF DECISION - 11

Generally, a request for an order is made by "motion."  *See* Fed. R. Bankr. P.

9013.  However, the Court cannot conclude that § 109(h)(3)(A) authorizes the use

of a simple motion, signed only by counsel, making allegations about the possible

claim to an exemption from the § 109(h)(1) requirements.  *See*, *e.g.*, Debtors'

Request, Doc. No. 6.  There would be no reason for Congress to specifically

require a certification if it intended a garden-variety motion signed by counsel to

suffice.[16]

What is contemplated by the statute's use of the term "certification" is not

immediately clear.  It is not a defined term in the Code, *see* § 101, or in the

Rules.[17]  For interpretive help, the Court looks to Congress' use of the term

"certification" in another BAPCPA amendment.

Under § 524(k)(5), a reaffirmation agreement must be accompanied by a

prescribed form of "Certification by Debtor's Attorney (If Any)" in which such

attorney is required to state "I hereby certify that" the agreement meets certain

standards.  Those same standards are restated in § 524(c)(3), though there the

---

[16]  The Court appreciates that when a party or counsel signs a motion, that signer "is certifying" the allegations have evidentiary support and legal merit.  *See* Fed. R. Bankr. P. 9011(b)(3).  However, the Court concludes the language used in § 109(h)(3)(A) requires more than the implicit certifying effect of Rule 9011.

[17]  The Rules do speak to "verified" statements and pleadings.  *See*, *e.g.*, Fed. R. Bankr. P. 1007(f) (regarding "verified statement" of social security number), Fed. R. Bank. P. 1008 (verification of petitions, schedules and statements); Fed. R. Bankr. P. 9011(e) (noting general lack of requirement of verification).  That "verification" and "certification" might be treated as synonymous, even though not specifically so stated in the Rules, flows from 28 U.S.C. § 1746 discussed below.

MEMORANDUM OF DECISION - 12

attorney's required submission is called "a declaration or an affidavit" rather than a certification.  Affidavits and declarations are signed by parties with personal knowledge and provide a means for proof of facts, a step beyond that of mere allegation as in a motion.  *See*, *e.g.*, Fed. R. Civ. P. 56(e), incorporated by Fed. R. Bankr. P. 7056 (addressing form of affidavits).

Additionally, 28 U.S.C. § 1746 states in part:

> Whenever, under any law of the United States . . . any matter is required or permitted to be supported, evidenced, established or proved by the sworn declaration, verification, *certificate*, . . . [the following form may be used]:
> . . .
> (2)   If executed within the United States, its territories, possessions or commonwealths: "I declare (or *certify*, verify or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)."

28 U.S.C. § 1746 (emphasis added).

The Court therefore concludes that a request for an order under § 109(h)(3) must be "certified" by debtors personally in a form consistent with 28 U.S.C. § 1746(2), even if they are represented by an attorney.[18]  In this way, they verify and certify the *facts* that they wish the Court to consider under § 109(h)(3)(A).[19]

---

[18] If signed with appropriate certifying language, *see* § 28 U.S.C. § 1746, the title of the document is of limited significance.  As § 523(c)(3) and (k)(5) indicate, Congress uses certification, declaration and affidavit interchangeably.  *See also* Fed. R. Bankr. P. 1001 (the Rules are to be construed to secure the just, speedy and inexpensive determination of cases and proceedings); *EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 643 (9th Cir. 2003) (warning against and refusing to "exalt form over substance").

[19] Other decisions construing the certification requirement of § 109(h)(3) are in general
(continued...)

MEMORANDUM OF DECISION - 13

## 2.    What the certification must establish

Section 109(h)(3)(A) establishes three separate requirements for a

temporary exemption from the requirement of § 109(h)(1).  They are listed in a

conjunctive, rather than disjunctive, fashion.  A debtor must therefore satisfy *each*

of the three elements in § 109(h)(3)(A)(i), (ii) and (iii) in order to obtain a

temporary exemption.  *See In re Cleaver*, 2005 WL 3099686, at *4; *In re Watson*,

332 B.R. 740, 745 (Bankr. E.D. Va. 2005); *Hubbard*, 332 B.R. at 289 (citing *Feist*

*Publ'n, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 357 (1991)); *LaPorta*, 332

B.R. at 881-82; *In re Gee*, 332 B.R. 602, 604 (Bankr. W.D. Mo. 2005).

### a.    Presence of exigent circumstances

A debtor must "describe" the "exigent circumstances" that debtor contends

merit an exemption.  *See* § 109(h)(3)(A)(i).  Exigent has been defined as

"[r]equiring immediate action or aid; urgent," and exigent circumstances are

defined as "[a] situation that demands unusual or immediate action and that may

allow people to circumvent usual procedures, as when a neighbor breaks through a

window of a burning house to save someone inside."  *See* Black's Law Dictionary

260, 614 (8th ed. 2004).

---

[19](...continued)
accord with what the term requires, or at least what does not measure up.  *See*, *e.g.*, *In re Cleaver*,
No. 05-46572, 2005 WL 3099686, at *3-4 (Bankr. S.D. Ohio Nov. 17, 2005); *In re Hubbard*, No.
05-95017, 2005 WL 3061939, at *2-3 (Bankr. S.D. Tex. Nov. 8, 2005) (decision on
reconsideration regarding § 109(h)(2)); *In re Hubbard*, 332 B.R. 285, 289 (Bankr. S.D. Tex.
2005); *In re LaPorta*, 332 B.R. 879, 881-82 (Bankr. D. Minn. 2005).

In the context of a bankruptcy filing without the requisite credit counseling, the circumstances presented obviously have to relate in some way to the urgency and need to file. And they must establish something sufficiently different from or more pressing than the usual or typical motivations to file bankruptcy so as to justify dispensing with the requirement of prefiling counseling. That is to say, the described and certified facts must show what makes this debtor different from all the others who are expected to comply with § 109(h)(1).

The circumstances will vary depending on the debtor, and the inquiry is highly fact specific. The key is that the factual circumstances proffered must be relevant and to the statutory point, must be specifically described, and must be certified by the debtor.[20]

### b.    Debtor requested, but was unable to obtain, counseling within five days

Subsection (ii) requires that the debtor's certification state:

> that the debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services referred to in [§ 109(h)(1)] during the 5-day period beginning on the date on which the debtor made that request[.]

§ 109(h)(3)(A)(ii).

It thus appears the certification must affirmatively state two things: first, that a request for counseling was made by debtors prior to filing; second, that the

---

[20] The question of exigent circumstances is discussed further below in connection with Debtors' Certifications.

MEMORANDUM OF DECISION - 15

counseling could not be provided within five days of that request.

The first is relatively easy to evaluate – either the debtor did, or did not, request credit counseling prior to filing bankruptcy.[21]  An appropriate certification of the debtor will establish the fact that the request was made, of whom (*i.e.*, which agency), when, and how.[22]  The second "five day period" requirement also seems clear: were the debtors advised, in response to their request, that the credit counseling services could not be provided within five days of the request?

To Debtors, this second requirement is problematic and unworkable.  For example, they fear this requirement might eliminate the possibility of being able to file immediately after making an actual request for counseling regardless of the "exigency" of the circumstances, because the statute could be viewed as imposing

---

[21]  Debtors argue that nothing in § 109(h) indicates that the request for counseling be made *prior* to the petition date.  *See* Doc. No. 25 at 4.  The Court concludes they are mistaken.  Credit counseling is now an "eligibility" requirement.  It is patently a prebankruptcy event.  The provisions of § 109(h)(1) and § 521(b)(1), as implemented further by the Interim Rules as discussed above, require disclosure *at the time of the petition* that a debtor has qualified.  Further, the certification needed for a § 109(h)(3)(A) temporary exemption, also to be filed with the petition, requires an affirmative statement verifying the fact that the debtor made the request.  *See* § 109(h)(3)(A)(ii) ("states that the debtor requested credit counseling services").  *See also In re LaPorta*, 332 B.R. at 883 ("[A] post-petition consultation may be done only by leave of the court.  That 'leave' is to be granted only for a bankruptcy filing that is prompted by 'exigent circumstances.'  Further, it is to be granted only to debtors *who actually tried to obtain the counseling pre-petition, via an actual request* to a credit counseling agency but who were unable to get the counseling service promptly enough against the backdrop of the 'exigent circumstances.'") (emphasis added).

[22]  *Accord Cleaver*, 2005 WL 3099686 at *4 ("'Normally, the certification should set forth the facts underlying any alleged exigent circumstances, the date(s) on which the debtor requested credit counseling, which agencies were contacted to render the services, why the debtor believes that the services could not be obtained before the filing, and when the services are reasonably likely to be obtained.'" (quoting *Hubbard*, 332 B.R. at 289)).

MEMORANDUM OF DECISION - 16

a mandatory five-day waiting period before filing. *See* Doc. No. 25 at 4-7.[23]

The Court must, of course, evaluate the language Congress used, and consider its "plain meaning." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989), states "[t]he plain meaning of legislation should be conclusive, except in the 'rare case [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Id.* at 242; *see also Lamie v. United States*, 540 U.S. 526, 534-36 (2004).

Reading – plainly – the two components of § 109(h)(3)(A)(ii) together, a debtor may seek an exemption if he certifies that (a) he made the request for counseling prior to the filing of his petition and (b) the counseling agency to whom he made that request advised it could not accommodate his request and hold the counseling session within five days. In such a situation, there would be no "waiting period."[24]

However, if a prospective debtor makes the counseling request and is advised that the request *can* be accommodated within five days, it appears he

---

[23] Debtors also argue that a counseling session would have been of little use to them, given the nature of their debts and the balance of their circumstances. They point to several aspects of § 111, such as § 111(c)(2)(E), and argue that the function to be served by counseling is not relevant to them or to similarly situated debtors. They thus urge the Court to refuse to require compliance with the "absurd" requirement of § 109(h)(3)(A)(ii). *See* Doc. No. 25 at 3-4. The argument is unavailing. In § 109(h)(3), Congress did not grant debtors the right to seek, nor the bankruptcy courts the right to grant, an exemption because the mandatory counseling would be of little or no benefit.

[24] Of course, even if he meets § 109(h)(3)(A)(ii) in this fashion, he must still meet the requirements of § 109(h)(3)(A)(i) and (iii) as well.

MEMORANDUM OF DECISION - 17

could never make the precise certification specifically required under

§ 109(h)(3)(A)(ii) even if he felt there were sufficiently exigent circumstances to

support an immediate bankruptcy filing, *i.e.*, before the counseling is held.  In that

case, the debtor would appear to be required to delay the filing, notwithstanding

what he feels are good reasons to file within that five-day period.[25]

This may seem, and in fact it might be, a harsh standard.  However, that the

BAPCPA amendments "may produce an unpopular and perhaps even burdensome

result" does not require the Court to fashion a judicial remedy; instead "the proper

venue . . . lies with Congress."  *Watson*, 332 B.R. at 745; *see also LaPorta*, 332

B.R. at 883-84.

Debtor asks the Court to hold that exigencies advanced under

§ 109(h)(3)(A)(i) are capable of overriding the five day requirement of

§ 109(h)(3)(A)(ii), and to "strike" the latter requirement.[26]  The Court, however, is

strongly cautioned against construing statutes in a way that renders any portion

thereof a nullity.[27]  It will therefore decline Debtors' invitation.

---

[25] *See Cleaver*, 2005 WL 3099686 at *5 (noting, but not reaching, this issue).

[26] *See* Doc. No. 25 at 6 ("If circumstances are exigent, then one would not require
waiting another 5 days. . . . [T]he court should strike section 109(h)(3)(A)(ii) in its entirety.  The
remaining sub-sections (i) and (iii) are sufficient to effectuate the intent of congress.")

[27] *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (noting that it is the court's duty to "give
effect, if possible, to every clause and word of a statute" (internal quotations omitted));
*Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (quoting *Mackey v. Lanier Collection Agency &
Serv., Inc.*, 486 U.S. 825, 837 (1988) and noting that the Supreme Court "is hesitant to adopt an
(continued...)

MEMORANDUM OF DECISION - 18

This Court thus concludes that debtors seeking an exemption under § 109(h)(3)(A) must not only allege but also certify, in order to comply with § 109(h)(3)(A)(ii), that (a) they made a request for counseling prior to filing and (b) the agency could not accommodate the request and provide such counseling within five days of the request.[28]

If that certification, in conjunction with the exigent circumstances needed to meet § 109(h)(3)(A)(i), satisfies the Court as required under § 109(h)(3)(A)(iii), then an exemption of limited duration is provided within which the debtors can get the counseling and comply with § 109(h)(1) and § 521(b)(1).

However, if no such § 109(h)(3)(A)(ii) certification is made, one of the required elements is lacking and the request must be denied.

### c.    Satisfactory to the court

Finally, a debtor's submissions must be "satisfactory to the court." *See* § 109(h)(3)(A)(iii).  This certainly implicates judicial discretion.[29]  Of course, it

---

[27](...continued)
interpretation of a congressional enactment which renders superfluous another portion of that same law"); *United States v. Handy*, 761 F.2d 1279, 1280 (9th Cir. 1985) ("A statute should be construed so as to avoid making any word superfluous.").  *Accord Cleaver*, 2005 WL 3099686 at *4-5 (noting that exigent circumstances were shown but denying waiver for a failure to establish compliance with § 109(h)(3)(A)(ii)); *Gee*, 332 B.R. at 604 (same).

[28]  Debtors also attack the constitutionality of § 109(h)(3)(A)(ii).  *See* Doc. No. 25 at 4-5.  The constitutional challenge is not adequately presented or briefed, and the Court will not entertain it.  *See also Watson*, 332 B.R. at 746-47 (rejecting constitutional arguments regarding § 109(h)).

[29]  Section 109(h)(3)(A) says that the requirements of § 109(h)(1) "shall not apply" with
(continued...)

MEMORANDUM OF DECISION - 19

also raises the possibility of less than fully uniform treatment as between districts or even within a given district, as what is satisfactory to one judge might not satisfy another.

Nothing, as yet, tells the bankruptcy courts what should guide their discretion or satisfy them. The key, almost certainly, will be the specific factual circumstances described in the certification. If not sufficiently exigent and compelling, the certification will not be satisfactory to the court, and the temporary exemption will not be authorized.

### E.    Application of the foregoing standards to the Request and the Certifications

With this discussion and these standards in mind, the Court must determine if Debtors have properly sought and justified a temporary exemption from the requirement of pre-bankruptcy credit counseling.

### 1.    The Request

Debtors' initial Request herein was procedurally flawed. There was no "certification" or any similar or equivalent process. The allegations of their counsel were not enough. However, Debtors were given an opportunity, at

---

[29](...continued)
respect to a debtor meeting the three requirements. Ordinarily, the use of the term "shall" indicates a mandatory nature while the use of the term "may" connotes discretion. *See Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 125 S.Ct. 694, 703 (2005); *Haig v. Agee*, 453 U.S. 280, 294 n.26 (1981). Here, the inclusion of the third element, that the certification is satisfactory to the court, essentially converts the mandatory "shall" of § 109(h)(3)(A) into "may."

MEMORANDUM OF DECISION - 20

hearing, to resubmit their Request in a proper form.[30]  They did so with the First

and Second Certifications.

### 2.    The Certifications

Debtors' First Certifications were terse and conclusory.  The "exigent

circumstances" were addressed only obliquely in the first paragraph, and Debtors

simply parroted the statutory language of § 109(h)(3)(A)(ii) in the following two

paragraphs.  *See* Doc. No. 21 (quoted above).  While they were signed and

certified, these First Certifications were deficient in providing any detail of

pertinent facts.  *Accord Hubbard*, 2005 WL 3061939, at *2 n.2 (noting, in regard

to what would be "satisfactory" under § 109(h)(3)(A)(iii) that a "conclusory

allegation that the debtor is unable to obtain credit counseling services is less

sufficient than an allegation that gives the dates and times of attempts to obtain the

services and the reasons (if known) why the attempts were unsuccessful").  This

Court concludes that a boiler-plate allegation, merely reciting the statutory

language, is inadequate under both subsections (ii) and (iii), even if that allegation

is certified.

Further, Debtors' Second Certification does not prove compliance with the

requirements of § 109(h)(3)(A)(ii).  Closely read, the facts certified in the Second

---

[30]  As this was a matter of first impression, allowing Debtors to remedy the inadequate
submissions was appropriate.  But, in future cases, debtors and their counsel are cautioned that
such leave may not be provided.  It is a debtor's burden to file appropriate certifications at the
outset.

MEMORANDUM OF DECISION - 21

Certification do not establish both prongs of that element.  Even if Debtors "made

a request" of the second agency discussed in the Second Certification, there is

nothing indicating any response from this agency advising Debtors that the

counseling could not be provided within five days.  It appears that this agency's

employee to whom counsel spoke could provide Debtors no information at all, and

indicated only that someone else would later make a return call to advise whether

and when counseling might occur.  Debtors opted to file without paying this

second agency and without waiting for a response from it as to when counseling

could be provided.[31]

The Court also concludes the requirements of § 109(h)(3)(A)(i) and (iii)

were not met.  The circumstances were not clearly exigent, and they do not satisfy

the Court.

The court in *Cleaver* notes:

> [T]he common reality is that many debtors file at the last minute just
> before a foreclosure sale or the loss of their money or possessions to
> creditors.  Furthermore, it is difficult to conceive of any exigent
> circumstances related to bankruptcy that would not involve impending
> creditor action.  Absent some sort of immediate collection activity,
> there is no urgency affecting the timing of a bankruptcy filing.
> Consequently, the immediacy of the foreclosure sale in this case
> appears to be exactly the sort of exigent circumstance contemplated by
> the statute.

2005 WL 3099686 at *4.  In a footnote to this passage, the court observed:

---

[31] Debtors abandoned their contact with this agency and, post-petition, started talking
with a third credit counseling agency.

MEMORANDUM OF DECISION - 22

> Bankruptcy is frequently a last resort because many debtors attempt to repay their creditors and avoid the stigma associated with a bankruptcy filing for as long as possible.  As a matter of policy, that seems appropriate and in accord with the general tenor of BAPCPA, but, as discussed later in this decision, the newly amended statute also penalizes those debtors who wait until the penultimate hour or the "eve of foreclosure" to file their bankruptcy petitions.

*Id.* at n.6.[32]

This Court concurs, in general, with the observations in *Cleaver* about what might be exigent.  It is hard to imagine an exigent circumstance sufficient to motivate an immediate bankruptcy filing that does not concern creditor collection activity of some sort.  Still, virtually every bankruptcy has such factors looming in the background somewhere.  Congress did not, in § 109(h), grant each and every debtor a pass on the counseling requirement due to an impending foreclosure, garnishment, trial or other filing motivator.  It is clear enough that § 109(h)(3)(A) exemptions are intended to be the exception, not the rule.

Foreclosures do not come without a good deal of advance notice.[33]  To a lesser degree, neither do garnishments or executions on judgments.[34]  Impending

---

[32] *Cleaver* further commented, that "[t]he typical brinkmanship attributable to such exigent circumstances may be considerably curtailed by the second certification requirement [of § 109(h)(3)(A)(ii)]." *Id.* at *5.

[33] In Idaho, a debtor is entitled to notice of default under Idaho Code § 45-1505 and 120 days notice of a scheduled sale on a deed of trust. *See* Idaho Code § 45-1506.

[34] Post-judgment executions by levy and sale require varying notice periods depending on the type of asset at issue. *See* Idaho Code § 11-302. And, the Idaho Code establishes several requirements to effectuate a garnishment, including a 14 day notice period in which a debtor may
(continued...)

MEMORANDUM OF DECISION - 23

trial dates and other similar motivators also do not spring up overnight. Nonbankruptcy law has myriad procedural protections for debtors, providing advance notice of what might occur and when. Waiting, therefore, until the eve of creditor action before addressing the § 109(h) prerequisite for filing bankruptcy makes the exigency rather self-inflicted.

Thus, a debtor's certification should forthrightly address the extent of his or her knowledge of the credit counseling requirement; the contacts if any with lawyers, petition preparers or others providing advice, and whether such advice included information regarding the counseling requirement; and the nature and timing of the event(s) that create the exigency for filing.

In the present case, the factors on exigency are rather mixed. According to the additional facts set forth in the Second Certification, Debtors knew, in early October, that the bankruptcy laws were changing. After being garnished, they consulted with counsel (ultimately the attorney they retained for this filing) on October 5. Then, after suffering two more garnishments, they returned to counsel for a bankruptcy filing. In talking with him by phone on November 1, they specifically discussed the credit counseling requirement. They went to Counsel's office on November 2 to prepare the bankruptcy filing and to make arrangements to satisfy the counseling requirement.

---

[34](...continued)
claim an exemption. *See* Idaho Code § 8-507 *et. seq.*

MEMORANDUM OF DECISION - 24

Garnishment, as noted, may be an exigent circumstance.  However, while the impending garnishment was certainly a matter of concern, Debtors had gone through two garnishments in October *after* having first consulted with counsel and before returning on November 1 to follow up on a bankruptcy filing.[35]  That the anticipated November 3 garnishment was so critical as to qualify in this case as an exigent circumstance was not clearly shown.[36]

But even if circumstances were conceptually exigent within the contemplation of the statute, the certification does not adequately explain or justify Debtors waiting until November 2 to address the statutorily prescribed eligibility condition.  Debtors met with counsel a month earlier.  They were aware that changes in the bankruptcy process were coming.  They thought they would file before those changes became effective (*i.e.*, before October 17), but lacked the funds.  By October 18 Debtors knew that any possible filing would have to be under the new Code regime.  Some time therefore existed to meet the credit counseling requirement.  That Debtors waited until November 1 to face the issue

---

[35]  Idaho law provides for "continuing garnishments" effective on a debtor's wages until released or satisfied.  *See* Idaho Code § 8-509.  The details of the garnishment were not provided here, but Debtors' knowledge of the repeating nature of the garnishments and the paydays on which they would occur strongly suggests a continuing garnishment was in place.  It also appears that counsel was alerted in early October to the ongoing nature of the collection activity.  *See* Second Certification at 1 (noting a garnishment preceded the first consultation with counsel on October 5).

[36]  Without extensive discussion, the Court acknowledges there are countervailing facts, such as Debtor Rodriguez's loss of employment; but ultimately, the Court cannot conclude that exigent circumstances were clearly shown.

MEMORANDUM OF DECISION - 25

is a problem.  This is especially true since here, unlike the situation in other cases recently presented to the Court under § 109(h)(3)(A), these Debtors had the benefit of talking to counsel well in advance of filing, had some awareness of the changes in bankruptcy laws scheduled for mid-October, and had time to face those challenges.

Ultimately, the submissions are not satisfactory to the Court.

**CONCLUSION**

This case presents difficult issues.  The Court appreciates that efforts were made by Debtors and their counsel to meet the new, more burdensome requirements imposed by BAPCPA.  But the Court cannot ignore those requirements, nor can it modify them.

The law is what it is.  The Court is obligated to enforce it as written.  *Lamie* instructs that it is not a court's proper function to re-draft the statute, or to "improve" it through interpretation, even if the Code's language is "awkward" or "ungrammatical" so long as it is not ambiguous or does not lead to absurdities.[37] Interpreting § 109(h)(3)(A) to mean what it says does not lead to ambiguity or necessarily absurd results, even though the consequences are serious.

---

[37]  "If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent.  'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.'  *United States v. Granderson*, 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (concurring opinion).  This allows both of our branches to adhere to our respected, and respective, constitutional roles.  In the meantime, we must determine intent from the statute before us."  *Lamie*, 540 U.S. at 542.

MEMORANDUM OF DECISION - 26

One of the clearer commands under BAPCPA is that individuals – with only very limited exceptions or possible temporary exemptions – must undergo credit counseling or briefing prior to filing for bankruptcy relief. The utility of the counseling may be debatable in some cases, but the requirement that it be obtained is not. An overly liberal approach to granting exemptions under § 109(h)(3)(A) would vitiate the evident Congressional intent that almost all individuals must undergo the counseling before, and as a precondition to, filing bankruptcy.

Debtors did not establish in their Certifications that they met each of the three elements necessary under § 109(h)(3)(A)(i), (ii) and (iii) to obtain a temporary exemption. Their Request and Certifications will therefore be denied.

Because the eligibility requirement of § 109(h)(1) was not met, and because Debtors have failed to justify an exemption under § 109(h)(3)(A), the case must be dismissed.[38]

The Court will prepare and enter an appropriate order.

---

[38] On December 5, Debtors filed signed statements alleging that they completed the counseling on December 2. *See* Doc. Nos. 28, 29. These statements, even if the temporary exemption had been granted, would not be adequate or acceptable. It is the *agency's* certificate of completion that a debtor must file to meet the requirements of the Code. *See* § 521(b)(1). On December 6, Debtors filed the agency certificates. *See* Doc. No. 30. They indicate counseling occurred on December 2. This would have been within the 30 day window addressed in § 109(h)(3)(B) *if* the exemption had been authorized. But since the exemption is not granted, Debtors lack eligibility and dismissal is required. *See, e.g.*, *LaPorta*, 332 B.R. at 883-84 ("A lack of statutory eligibility to 'be a debtor,' if it goes to a default on the part of the debtor that is incapable of cure under the very terms of the Code, is the very most fundamental 'cause' for dismissal [under § 707(a)].").

MEMORANDUM OF DECISION - 27

DATED:  December 9, 2005



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 28